**FILED**
**01-18-2019**
**Clerk of Circuit Court**
**Langlade County, WI**
**2019CV000009**
**Honorable John B. Rhode**
**Branch 1**

STATE OF WISCONSIN            CIRCUIT COURT           LANGLADE COUNTY

---

VOLM COMPANIES, INCORPORATED
a Wisconsin Corporation,
1804 N. Edison Street
Antigo, WI 54409

                Plaintiff,

     v.                              Case No. 2019-CV-000009 (JBR)
                                        Case Code: 30301—Money Judgment

KWIK LOK CORPORATION
an Indiana Corporation,
1222 Ryan Road
New Haven, IN 46774,

and

KWIK LOK CORPORATION
a Washington Corporation,
2712 S. 16th Avenue
Yakima, WA 98903

                Defendants.

---

## AMENDED SUMMONS

---

THE STATE OF WISCONSIN, to each person named above as a Defendant:

You are hereby notified that the Plaintiff, Volm Companies, Incorporated, has filed a lawsuit or other legal action against you. The Amended Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Amended Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Amended Complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Clerk of Court of the Circuit Court of Langlade County, whose address is Langlade County Courthouse, 800 Clermont Street, Antigo, WI 54409,

1

and to Plaintiff's attorneys:

Robert L. Gegios
Kohner, Mann & Kailas, S.C.
Washington Building,
Barnabas Business Center,
4650 North Port Washington Road
Milwaukee, Wisconsin 53212-1059

You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the court may grant judgment against you for the award of money or other legal action requested in the Amended Complaint, and you may lose your right to object to anything that is or may be incorrect in the Amended Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 18th day of January, 2019.

By:     Electronically signed by Atty. Ryan M. Billings
        Robert L. Gegios
        State Bar No. 1002906
        Ryan M. Billings,
        State Bar No. 1084543
        **KOHNER, MANN & KAILAS, S.C.**
        Washington Building
        Barnabas Business Center
        4650 N. Port Washington Road
        Milwaukee, WI 53212-1059
        Telephone:     (414) 962-5110
        Facsimile:     (414) 962-8725
        Email:         rgegios@kmksc.com
                       rbillings@kmksc.com

        *Attorneys for Plaintiff Volm Companies, Incorporated*

2

FILED
01-18-2019
Clerk of Circuit Court
Langlade County, WI
2019CV000009
Honorable John B. Rhode
Branch 1

STATE OF WISCONSIN          CIRCUIT COURT          LANGLADE COUNTY

VOLM COMPANIES, INCORPORATED
a Wisconsin Corporation,
1804 N. Edison Street
Antigo, WI 54409

        Plaintiff,

   v.                              Case No. 2019-CV-000009 (JBR)
                                           Case Code: 30301—Money Judgment

KWIK LOK CORPORATION
an Indiana Corporation,
1222 Ryan Road
New Haven, IN 46774,

and

KWIK LOK CORPORATION
a Washington Corporation,
2712 S. 16th Avenue
Yakima, WA 98903

        Defendants.

---

## AMENDED COMPLAINT

---

    As its Amended Complaint against the Defendants, Kwik Lok Corporation (IN) and Kwik Lok Corporation (WA), Plaintiff, Volm Companies, Incorporated, alleges as follows:

### Parties

    1.    Plaintiff Volm Companies, Incorporated ("Volm"), is a Wisconsin corporation, with its principal place of business located at 1804 N. Edison Street, Antigo, WI 54409. Started as a small family-run business in Bryant, Wisconsin, in 1954, Volm has grown to become a leading

3

source for packaging and equipment solutions for a wide variety of products, such as potatoes, onions, citrus and other produce.

2.     Defendant Kwik Lok Corporation ("Kwik Lok (IN)") is an Indiana corporation, that presently with the state of Indiana lists its principal place of business as 1222 Ryan Road, New Haven, IN 46774. On information and belief, the address from which Kwik Lok (IN) is managed and primarily operated, and its actual principal place of business, is located at 2712 S. 16th Avenue, Yakima, WA 98903.

3.     Defendant Kwik Lok Corporation ("Kwik Lok (WA)") is a Washington corporation, with its principal place of business located at 2712 S. 16th Avenue, Yakima, WA 98903.

4.     At all times material to this Amended Complaint, Kwik Lok (IN) and Kwik Lok (WA) presented themselves to Volm and the public as Kwik Lok, a single company, making no distinction between the two corporate entities, and failing to distinguish between the two companies in interacting with Volm and the public as to their respective patent, trademark or other intellectual property rights, or in any other way. They acted jointly at all times material to this Amended Complaint, are jointly and severally liable for each other's conduct, and will be referred to together as "Kwik Lok."  Kwik Lok manufactures plastic bag-closures, and machines that automatically apply plastic bag-closures to bags.

### Jurisdiction and Venue

5.      Jurisdiction is proper in this Court under Wis. Stat. §§ 801.05(1)(d), (3), (4), and (5), because, among other things, Kwik Lok is engaged in substantial and not isolated business activities within Wisconsin, and the injury complained of occurred in Wisconsin as a result of Kwik Lok's conduct and promises within and outside of Wisconsin.

4

6.      Venue is proper in this Court under Wis. Stat. § 801.50(2)(a), (b) and (c), because, among other things, the claims arose in Langlade County.

**A.      Volm's Business and Decades-Long History with Kwik Lok.**

7.      As part of its business, Volm designs, manufactures, sells, distributes and services machines and products that allow Volm's customers to pack potatoes, onions, citrus and other products. Volm's customers pack such products, among other things, for sales to consumers in supermarkets and grocery stores. A significant number of Volm's customers are Wisconsin businesses, and a significant amount of Volm's products are ultimately sold to Wisconsin consumers.

8.      Kwik Lok is a manufacturer and seller of plastic bag-closures and machines that automatically apply plastic bag-closures to close plastic and other bags. Kwik Lok's plastic bag-closures are ubiquitous, and can be found in virtually every supermarket and grocery store in Wisconsin. Below is an image of one such closure:



9.      Kwik Lok originally developed its plastic bag-closures and bag-closing machines for the bread industry. However, beginning in the late 1980's, Kwik Lok began working with Volm. Over the next two decades, with Volm's help, including receiving access from Volm to Volm's network of customers and Volm's assistance in helping Kwik Lok adapt its bread-closing machines to work with other products, Kwik Lok was able to expand sales of its products beyond the bread industry into the potato, onion, citrus and other produce industries.

10.      In addition to helping design, sell, and service Kwik Lok bag-closure machines, Volm designs, manufactures, sells and services machines that sort, weigh, fill, and convey products

5

through Kwik Lok machines, and Volm also manufactures plastic bags that are closed via Kwik Lok machines and closures. When put together, Volm's and Kwik Lok's machines and products are a complete automatic-packing solution for Volm's customers, to whom Volm sells and services the bundles of Volm and Kwik Lok products.

11. So that Volm's and Kwik Lok's products would work together in an integrated system of machines, Volm spent considerable time and resources working with Kwik Lok to develop products that would work with Volm's machines. For example, Volm retrofitted and redesigned a '1083 bag closure system to integrate Kwik Lok products with the carousel bagger that Volm developed. These substantial investments by Volm benefitted Kwik Lok, as, because of Volm's help, Kwik Lok was able to design a product that would be useful to Volm's customer base in the potato, onion, citrus and other produce industries, which opened up these markets for sales of Kwik Lok products.

12. The relationship between Volm and Kwik Lok was tremendously successful over the course of more than 25 years. Volm sold millions of dollars of Kwik Lok machines, closures, and parts each year for decades. Kwik Lok recognized Volm's substantial contributions to Kwik Lok's success by giving Volm awards and plaques designating Volm as the seller of "The Largest Number of Automatic Machines Sold" among all of Kwik Lok's partners, in 2002, 2003, 2004, 2008, 2009, 2010, 2011-2012, 2012-2013, 2013-2014, and 2014-2015. Kwik Lok also gave Volm the designation of "OEM," meaning Original Equipment Manufacturer, to recognize Volm's original, ground-floor participation in Kwik Lok's growth and success. Volm believes it is the largest seller of Kwik Lok products for fresh produce in the United States, responsible for between eight and nine percent of all sales of Kwik Lok products.

6

13.     Volm employs more than a dozen sales representatives as well as a sales team to sell Kwik Lok products, and has invited Kwik Lok employees to Volm's national sales meetings and client dinners to introduce Kwik Lok employees to Volm customers and faithfully honor the sales relationship Volm believed it had with Kwik Lok.

14.     Volm also is a primary servicer of Kwik Lok products, employing more than 20 technicians, several employees responsible for parts, and a support team of Volm employees who are trained to service Kwik Lok products purchased by Volm's customers. Volm also maintains a large inventory (at times worth more than $1 million) of Kwik Lok machines, equipment and products, so that Volm can promptly replace (rather than engaging in lengthy repairs) a Volm customer's malfunctioning machine, to limit down-time to a bare minimum and protect Volm's customers in a fast-paced packing environment where product must be packed and shipped quickly to meet demand and prevent spoilage.

15.     This relationship between Kwik Lok and Volm, for more than 25 years, was a "handshake agreement" with no formal written contract. Both parties were satisfied with this relationship for decades, and under this arrangement, Volm sold many millions of dollars in Kwik Lok products to Volm's customers.

**B.     Kwik Lok's Monopoly and Improper Efforts to Preserve It.**

16.     There is a discrete, nationwide market in the United States for plastic bag-closures that are applied by automatic or semi-automatic bag-closing machines (the "Plastic Bag-Closures Market"). For many years, including at all times material to this Amended Complaint, there were no reasonably substitutable products in the United States for such plastic bag-closures. Kwik Lok, through a series of patents, maintained a monopoly of the Plastic Bag-Closures Market for decades. As those patents began to expire, however, Kwik Lok engaged in a series of wrongful and unlawful

7

acts that sought or accomplished improper monopolization, and created a dangerous probability of success in monopolizing the Plastic Bag-Closures Market for years to come.

17.    There are significant barriers to entry in the Plastic Bag-Closures Market, including, without limitation, substantial costs associated with research, design, marketing, production and distribution of these products, along with the closing machines that apply them. Further, for the closure and closing-machines to work properly, they must share identical or very similar technical standards with relation to the shape and size of the plastic bag-closure products that are applied by the closing machines, requiring coordination in the design and operation of the closures and closure machines.

18.    Kwik Lok introduced the first plastic bag-closures designed to run on automatic bag-closure machines in 1962, and patented both the closures and the automatic-closure machines. Through its patents, Kwik Lok was able to maintain an unchallenged monopoly in the Plastic Bag-Closures Market in the United States for more than 30 years.

19.    However, patents do not last forever. Kwik Lok knew that eventually its patents would run out, and it would face competition.

20.    In an improper, anti-competitive effort to extend its monopoly, Kwik Lok misrepresented to the public that its plastic bag-closures and its automatic bag-closure machines were protected, even after its patents had expired.

21.    Among other examples, as of March 7, 2013, Kwik Lok falsely and misleadingly stated on its website (www.kwiklok.com): "We designed and patented the original all-plastic bag closures." As of December 19, 2013, Kwik Lok falsely and misleadingly advertised on the Sun Country website (www.suncountrypackaging.com) that its "closures have a patented web-connecting design that allows the closure to be separated from the strip without producing

8

objectionable web residue." There was no disclosure on either website that Kwik Lok's patents had expired and no longer protected Kwik Lok's plastic bag-closures. Kwik Lok took steps to give the industry a false impression that Kwik Lok maintained legal rights that protected it from competition, to maintain its monopoly of the Plastic Bag-Closures Market and to stifle any potential competitors' thoughts of entering the market.

22.     In another improper, anti-competitive effort to extend its monopoly of the Plastic Bag-Closures Market, Kwik Lok turned to trademark law.

23.     Kwik Lok registered a trademark (U.S. Trademark Registration No. 1,972,043, the "Bag-Closure Trademark") on what was essentially a plastic square with an opening through which a bag is closed. It did so for the express improper purpose of misusing trademark law to prevent competition and maintain its monopoly of the Plastic Bag-Closures Market. In connection with the efforts to secure and maintain a trademark, Kwik Lok falsely claimed that the shape of its plastic bag-closures is "arbitrary" and "not functional" (meaning that other plastic bag-closures with meaningfully different shapes could function just as cheaply and efficiently in automatic closing-machines). Because the shape of its bag closures, Kwik Lok claimed, is "arbitrary and not chosen for a functional purpose," Kwik Lok asserted that its plastic bag-closures were properly protected by U.S. trademark law.

24.     In 2012, Schutte Bagclosures Inc., ("Schutte") an American subsidiary of a Dutch company that sells plastic bag-closures in Europe, sued Kwik Lok (WA) in the United States District Court for the Southern District of New York, in a case captioned *Schutte Bagclosures Inc., v. Kwik Lok Corporation*, Case No. 12-CV-5541 (JGK) ("SDNY Litigation"). In the SDNY Litigation, among other things, Schutte sought a declaratory judgment that Kwik Lok's Bag-Closure Trademark is invalid.

9

25.    Following a five-day trial, on June 14, 2016, the court in the SDNY Litigation issued an opinion. In the opinion, the court made the following findings, all of which will bind Kwik Lok in this litigation under such doctrines as collateral estoppel and fact preclusion:

a.    Kwik Lok is the only company in the United States that produces and sells re-usable sheet plastic closures that run through an automatic closing machine. (SDNY Litigation, 193 F. Supp. 3d 245, 252, ¶ 3 (2016));

b.    Those plastic closures are designed to run through machines at very high speeds, in some cases up to 6,600 bags per hour (or 110 per minute). (*Id.*);

c.    Kwik Lok is the owner of a U.S. trademark registration, [U.S. Trademark Registration No. 1,972,043, (the "'043 Registration")], which is a graphic rendering of "plastic closures for bags…" (*Id.*, ¶ 8);

d.    Although Kwik Lok has distributed several slight variations of Kwik Lok's plastic bag-closure products, these products are substantially the same shape as the closure in the '043 Registration. (*Id.*, at 253, ¶ 13);

e.    Kwik Lok has been using these plastic bag-closures for 50 years (*Id.*, at 275, ¶ 98);

f.    From 1996 through 2013, sales of Kwik Lok bag-closure products exceeded 5 billion units per year. Between March 31, 1997, and

10

March 31, 2013, Kwik Lok sold more than 100 billion plastic bag-closures. (*Id.* at 275-76, ¶ 101);

g.    Kwik Lok in some cases did not have any contact with the customers who purchased its products, as the customers interacted directly with third-party distribution sources (like Volm) who placed orders directly on behalf of those customers. (*Id.* at 254, ¶ 31);

h.    In response to the expiration of its patents for bag-closures, Kwik Lok sought to extend protection over its bag closures indefinitely using trademark law. (*Id.* at 265, ¶ 53);

i.    Kwik Lok did so by seeking to trademark essentially a simple square accompanied by an opening through which a bag is closed. That design is the only viable and economic way to design a plastic closure that can be fed through an automatic bag-closure machine. (*Id.*, at 273, ¶ 89);

j.    Kwik Lok's trademark is improper because it is "functional," meaning the shape of the bag-closure that Kwik Lok sought to protect by trademark law is the only viable way to design a plastic bag-closure that can be run through a high-speed machine. (*Id.*);

k.    A "functional" trademark is not permitted by law because an entity that trademarks a function achieves an improper monopoly, barring all products by competitors that seek to perform that function. (*Id.* at 261, ¶ 31);

11

l.    Because the "functional" trademark Kwik Lok obtained excluded all competitive plastic bag-closures, Kwik Lok's monopoly-creating Bag-Closure Trademark is invalid. (*Id.* at 286).

26.    The opinion in the SDNY Litigation and the invalidation of its Bag-Closure Trademark was a huge blow to Kwik Lok. For the first time in 54 years (since it first designed plastic bag-closures that run through automatic machines), Kwik Lok faced the prospect of competition in the United States. It acted swiftly, and illegally, to counteract the threat and restrain competition in the Plastic Bag-Closures Market.

**C.    Kwik Lok Improper Attempts to Continue Its Monopoly Through Unlawful Distribution Agreements.**

27.    The vast majority of Kwik Lok's sales are made through independent distribution (like Volm provided) in the United States. (SDNY Litigation, 193 F. Supp. 3d at 254, ¶ 28.)

28.    As of June 2016, Kwik Lok had no formal contracts with these distribution sources (such as Volm). (*Id.*, ¶ 29.) These distribution sources were not prohibited by contract from selling products competitive to Kwik Lok's products, but there were no such competitive products, as Kwik Lok had a decades-long monopoly in the United States. (*Id.*, ¶ 30.)

29.    Kwik Lok came annually to Antigo to meet with Volm to discuss their business together and new developments. In June 2016, after the trial in the SDNY Litigation, Kwik Lok asked to come to Antigo to meet with Volm. Kwik Lok provided no notice, prior to the meeting, that it intended to present Volm at the Antigo meeting with a contract that would fundamentally change the nature of the 25-year relationship between Kwik Lok and Volm.

30.    At the meeting, Kwik Lok presented a lengthy contract to Volm and demanded that Volm sign it within a short time following the meeting.

12

31.    The draft contract was unreasonable, onerous and one-sided, including because it specified the markup Volm would be permitted to charge Volm's customers on sales of Kwik Lok products.  In a business relationship lasting more than 25 years, Kwik Lok had never before sought to control Volm's pricing in this fashion.

32.    Kwik Lok's representatives were vague and evasive in explaining the purpose of the contract, telling Volm that Kwik Lok was asking all its distributors to sign such contracts. It told Volm at the meeting that if Volm did not sign the contract, Kwik Lok would not allow Volm to buy Kwik Lok products.

33.    The June 2016 draft contract was onerous in both apparent and subtle ways. Among other things, it contained unreasonably broad non-compete provisions barring Volm from directly or indirectly developing, manufacturing or selling any product that would compete with Kwik Lok's products, unreasonably broad non-solicitation agreements barring Volm from contacting any past or current Kwik Lok vendor or supplier, and an unreasonably broad non-disclosure provision with an expansive definition of "Confidential Information" that, among other things, characterized the names and addresses of every actual or potential buyer of Kwik Lok products from Volm as "Confidential Information." All of these provisions were to survive termination of the contract, and the non-disclosure period never expired.

34.    Because Kwik Lok had a monopoly over the entire U.S. Plastic Bag-Closures Market, every company that used plastic bag-closures was an actual or potential Kwik Lok customer. By labeling the identities and contact information of every actual or potential Kwik Lok customer as "Confidential Information," and permanently barring Volm from ever using or disclosing any "Confidential Information," Kwik Lok sought permanently to prevent Volm from

contacting any actual or potential customer of any product that was competitive with Kwik Lok's products.

35.    Volm learned that Kwik Lok was asking all its distributors to sign similar contracts. By locking its distributors into agreements that permanently prevented contact with all actual or potential customers in the entire U.S. market, Kwik Lok intended to use these distribution agreements to create a chokehold that would restrain competition in the Plastic Bag-Closures Market and extend its monopoly indefinitely.

36.    Kwik Lok's anti-competitive intent concerning the distribution agreements is transparent from their timing. The SDNY Litigation opinion, invalidating the improper Kwik Lok Bag-Closure Trademark, was issued on June 14, 2016. The draft contract Kwik Lok presented to Volm specified that it became effective the next day, June 15, 2016.

**D.    Volm Attempts Unsuccessfully to Avoid the Draft Contract, But Is Forced to Sign It to Protect Its Customers and Maintain Its Business.**

37.    Volm was very distressed by Kwik Lok's proposed contract, and requested meetings and negotiations to attempt to revise its harsh and one-sided terms. Kwik Lok agreed to make a few changes, but did not budge on the material aspects of the onerous and unreasonable non-compete, non-solicitation and non-disclosure provisions. Eventually, Kwik Lok told Volm that it was not interested in any more changes, and Volm could sign the agreement or stop selling Kwik Lok products.

38.    Because of Kwik Lok's 54-year monopoly and Volm's heavy investment in Kwik Lok products (including its integration of Kwik Lok products with Volm's many products), Volm had two choices: (1) either sign Kwik Lok's unreasonable and unfair contract; (2) or exit the bag-closure business, abandoning Volm's customers and cutting both Volm and its customers off of any supply of plastic bag-closures and the machines that apply them to bags.

14

39.    The pressure to sign Kwik Lok's onerous contract was made even more urgent by the fact that (as Kwik Lok knew) Volm was entering its heavy-packing season, and needed immediately to place large orders with Kwik Lok to meet the needs of Volm's customers. Very reluctantly, under the duress of Kwik Lok's monopoly power and Kwik Lok's decision to present the contract at a time of most pressing need, Volm signed the contract, effective October 1, 2016 ("Distribution Agreement").

40.    The final Distribution Agreement was substantially similar to the draft presented by Kwik Lok in June 2016 in terms of the unreasonable non-compete, non-solicitation and non-disclosure provisions. It had a two-year, auto-renewing term, and provided that for three years after termination, Volm was not permitted to:

• "directly or indirectly, develop or manufacture Key Products (or help any other Person do the same)"; or

• "directly or indirectly, contact any known former or current Kwik Lok vendors or suppliers for its Key Products (or help any other person do the same)."

"Key Product" were defined as "(i) bag closures made of flat plastic (with or without labels); (ii) machinery or equipment that closes bags using the closures described in (i); whether made by Kwik Lok or otherwise."

41.    Thus, at minimum, Volm could not for a period of five years (the initial two-year term and the three-year post-termination period) work with any possible competitor of Kwik Lok to develop, manufacture or (effectively) to sell any plastic bag-closure or bag-closure machine. And if Volm ever terminated the Distribution Agreement for any reason, Volm would have to exit the Plastic Bag-Closure Market immediately, for at least three years, before Volm could even start

preparing to work with a competitor as it had done for decades with Kwik Lok. Such a long period with such a broad set of unreasonable restrictions would be the death knell of any company that considered ending its relationship with Kwik Lok and working with a competitor.

42.     Even worse, the Distribution Agreement had a permanent non-disclosure provision that prevented Volm from using or disclosing "Confidential Information," defined as:

> "[A]ny and all information, documentation or knowledge in any form, relating to the business and assets of Kwik Lok, not generally known to the public, disclosed to, or which may be obtained directly or indirectly by, the Distributor, or which may be derived in any way by it as a consequence of the performance of its obligations hereunder, including, without limitation, information relating to Kwik Lok's present and contemplated products and services; product designs; inventions, improvements; standards, specifications, systems, methods and operating procedures; techniques and modes of manufacturing, compounding or preparing products, formulations and recipes; merchandising, marketing plans and strategies; tests and reports; profits, costs, pricing, product sourcing and sales policies and strategies; **buying habits and preferences of present customers of Kwik Lok as well as prospective and potential customers, their names and addresses**; trade secrets, know-how, data, research and development; patent, trademark, copyright, industrial design and all other intellectual property and proprietary rights…

43.     Through its subversive definition of "Confidential Information," the Distribution re-defined all of Volm's customers as Kwik Lok customers, and permanently barred Volm from

16

using or disclosing their names, addresses, buying habits or preferences in any way for any purpose if the Distribution Agreement was ever terminated. Because, under the distorted language of the Distribution Agreement, all buyers of plastic bag-closures or bag-closure machines (100% of the U.S. market, given Kwik Lok's 54-year monopoly) were deemed "Kwik Lok" customers, the Distribution Agreement sought permanently to prevent Volm from dealing in any way with any company that had ever bought (or could potentially buy) a plastic bag-closure or closure machine.

44.     Even more troublingly, the permanent ban is not limited to contact concerning Kwik Lok products. The Distribution Agreement provides that Volm cannot use or disclose the names or addresses of actual or potential buyers of Kwik Lok products (effectively meaning Volm could not contact them), even to sell them Volm products! The designed effect of this Distribution Agreement was that, if Volm ever decided to part ways with Kwik Lok, Volm had to abandon all of its customers and never compete with Kwik Lok. Through the guise of unreasonable "distribution agreements" (which, in 2018, Kwik Lok confirmed that all sellers of Kwik Lok products had to sign), Kwik Lok planned to harm and restrain competition and to sustain its monopoly. Where patents and then trademark law had failed, Kwik Lok used its monopoly power to force its distributors to sign contracts that would tie up the entire U.S. Plastic Bag-Closures Market, indefinitely.

### E.     The Intolerable Distribution Agreement, and Volm's Unsuccessful Attempts to Re-Negotiate It.

45.     Volm was incredibly unhappy with the Distribution Agreement Kwik Lok had forced Volm to sign, and expressed that unhappiness to Kwik Lok on multiple occasions. When the original two-year term was set to expire on October 1, 2018, Volm told Kwik Lok that it would not be renewing the contract as it was written. Instead, Volm told Kwik Lok that it would negotiate in good faith a fair agreement that reflected the parties' 25-year history together, before the coerced

17

Distribution Agreement.

46.     After the Distribution Agreement was terminated, Kwik Lok briefly sold products to Volm under the parties' prior (pre-Distribution Agreement) handshake agreement. Volm promptly sent Kwik Lok a draft revised agreement, but Kwik Lok rejected it. Shortly thereafter, Kwik Lok abruptly demanded that Volm re-sign the original 2016 Distribution Agreement, as-is, giving Volm less than two business days to do so.

47.     Before Kwik Lok's deadline to sign had even expired, Kwik Lok called Volm and left a voicemail indicating that the sales relationship between Kwik Lok and Volm would be terminated.

**F.     Kwik Lok Enters into a New Agreement with Volm, But Immediately Breaches It.**

48.     On December 20, 2018, Kwik Lok sent Volm an email, informing Volm that Kwik Lok would honor any orders Volm placed that day, but thereafter Kwik Lok would not fulfill any of Volm's purchase orders for Kwik Lok products.

49.     Volm immediately accepted Kwik Lok's offer by timely sending Kwik Lok (on December 20) $430,376.13 worth of purchase orders for badly-needed products ("Purchase Orders"). However, after having reached this new agreement with Volm to accept all Volm's orders on December 20, Kwik Lok immediately breached the agreement by refusing to accept any of the Purchase Orders. Despite due demand and multiple attempts to get Kwik Lok to honor its agreement with Volm, Kwik Lok has refused to fulfill any of the Purchase Orders.

**G.     Kwik Lok Refuses to Return Volm's Property.**

50.     In addition to breaching its December 20 agreement with Volm, Kwik Lok has refused to return Volm property.

51.     At the request of Kroger Co. (one of Volm's customers), Volm paid for the creation

18

of custom artwork to be applied to plastic Kwik Lok closures Volm sold to Kroger. The artwork is imprinted on plates that are applied to the closures sold to Kroger. Volm paid for and owns both the artwork and the plates ("Kroger Artwork").

52.    Kwik Lok currently has possession of the Kroger Artwork. Given the termination of the relationship between Kwik Lok and Volm, Volm has demanded that Kwik Lok return the Kroger Artwork, and cease and desist any use of the Kroger Artwork not authorized by Volm.

53.    Despite due demand, Kwik Lok has refused to return the Kroger Artwork, or agree that it will not use the Kroger Artwork without Volm's permission.

## COUNT I
## BREACH OF CONTRACT

54.    Volm repeats and realleges the allegations contained in paragraphs 1 through 53 of this Amended Complaint as if fully set forth herein.

55.    Kwik Lok offered to accept all Volm purchase orders sent on December 20, 2018, and Volm accepted Kwik Lok's offer, forming an enforceable agreement.

56.    Kwik Lok breached the contract by refusing to fulfill Volm's December 20, 2018 Purchase Orders.

57.    Despite due demand, Kwik Lok refuses to abide by the terms of its contract with Volm.

58.    As a result of Kwik Lok's breach of contract, Volm has suffered damages, in an amount to be determined at trial.

59.    Volm has performed any and all conditions precedent to its right of recovery hereunder.

19

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

60.    Volm repeats and realleges the allegations contained in paragraphs 1 through 59 of this Amended Complaint as if fully set forth herein.

61.    Wisconsin law assumes an implied covenant of good faith and fair dealing in all contracts.

62.    Kwik Lok has breached its covenant of good faith and fair dealing by virtue of the conduct described above, including without limitation by abusing its monopoly power to force Volm to sign an unreasonable and unfair agreement, refusing to negotiate the terms of the agreement, unfairly terminating its more than 25-year relationship with Volm, agreeing to honor Volm's December 20 Purchase Orders and then breaking that promise, and refusing to return Volm's property.

63.    As a result of Kwik Lok's conduct, Volm has been damaged, in an amount to be determined at trial.

## COUNT III
## TORTIOUS INTERFERENCE

64.    Volm repeats and realleges the allegations contained in paragraphs 1 through 63 of this Amended Complaint as if fully set forth herein.

65.    Volm has actual and prospective contractual and business relationships with its customers and potential customers.

66.    Kwik Lok was and is aware of these relationships.

67.    Volm has an inventory of Kwik Lok products that it purchased prior to Kwik Lok's abrupt decision to stop selling products to Volm.  Kwik Lok has told Volm's customers that they

cannot purchase this inventory of Kwik Lok products from Volm, and that Volm's technicians cannot service Kwik Lok machines.

68.    Kwik Lok's wrongful conduct, including but not limited to the conduct described above, has wrongfully interfered with Volm's relationships with customers and potential customers.

69.    Kwik Lok has acted intentionally in interfering with Volm's relationships.

70.    Kwik Lok's interference was and is a direct and substantial factor in causing harm to Volm, in an amount to be determined at trial.

71.    Kwik Lok has acted maliciously towards Volm and in an intentional disregard of Volm's rights, and Volm is entitled to punitive damages in an amount to be determined at trial.

<u>**COUNT IV**</u>
**WIS. STAT. § 133.14 CLAIM**

72.    Volm repeats and realleges the allegations contained in paragraphs 1 through 71 of this Amended Complaint as if fully set forth herein.

73.    Volm is a commercial entity that was formed in, is headquartered in, and has had significant operations in Wisconsin for more than 60 years.

74.    Volm has sold substantial amounts of Kwik Lok products to Wisconsin businesses, who have ultimately sold substantial amounts of Kwik Lok products to Wisconsin consumers.

75.    Substantial aspects of Kwik Lok's anti-competitive conduct occurred in Wisconsin, and Kwik Lok's anti-competitive conduct substantially affected the people of the state of Wisconsin and substantially impacted Wisconsin. Therefore, Kwik Lok is subject to Wisconsin's antitrust laws.

76.    Wisconsin's antitrust laws are codified in chapter 133 of the Wisconsin statutes. This chapter begins with clear and strong statements by the Wisconsin legislature as to the

21

purposes behind, intent of, and instructions to Wisconsin courts in interpreting Wisconsin's antitrust laws:

> The intent of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition. It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition. It is the intent of the legislature to make competition the fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public interest as requiring the preservation and promotion of the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature.

Wis. Stat. § 133.01.

77.     The broad reach of Wisconsin's antitrust laws is specified in Wis. Stat. § 133.03, providing:

> (1) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal. Every person who makes any contract or engages in any combination or conspiracy in restraint of trade or commerce is guilty of a Class H felony….
>
> (2) Every person who monopolizes, or attempts to monopolize, or combines or conspires with any other person or persons to monopolize any part of trade or commerce is guilty of a Class H felony….

78.     To ensure that Wisconsin markets continue to be competitive and to promote competition as the fundamental economic policy of the state of Wisconsin, the Wisconsin legislature has authorized companies like Volm to serve as private attorneys general and bring civil actions for violations of Wisconsin's antitrust laws. One such action, the "full consideration" cause of action, is governed by Wis. Stat. § 133.14, which provides:

> **All contracts or agreements** made by any person while a member of any combination or conspiracy **prohibited by s. 133.03**, and which contract or agreement is founded upon, is the result of, grows out of or is **connected with any violation of such section**, either directly or indirectly, **shall be void** and no recovery thereon or benefit therefrom may be had by or for

22

such person. **Any payment made upon, under or pursuant to such contract or agreement to or for the benefit of any person may be recovered from any person who received or benefited from such payment** in an action by the party making any such payment or the heirs, personal representative or assigns of the party.

*Id.* (emphasis added).

79.    In other words, Wisconsin's full consideration statute provides that all contracts or agreements entered into with an entity who conspires or combines (by contract or otherwise) in violation of Wisconsin's antitrust laws, if such contracts or agreements are directly or indirectly founded upon, the result of, grow out of or are connected with any violation of Wisconsin's antitrust laws, are void. Any entity who makes a payment to or for the benefit of a person under a contract or agreement that is directly or indirectly founded upon, is the result of, grows out of, or is connected with a violation of Wisconsin's antitrust laws is entitled to a full refund of that payment.

80.    Volm entered into multiple contracts or agreements to purchase Kwik Lok products from Kwik Lok.

81.    During all or part of the pendency of these agreements, Kwik Lok was engaged in a combination, including with its distribution sources, in restraint of trade, in violation of Wis. Stat. § 133.03.

82.    Kwik Lok has improperly monopolized the Plastic Bag-Closures Market (the market for plastic bag-closures to be applied by an automatic or semi-automatic bag-closing machine, whose geographic scope is nationwide). The contracts or agreements Kwik Lok made while engaged in a combination in restraint of trade are void, and Volm is entitled to recover all payments it made to Kwik Lok or to Kwik Lok's benefit under contracts or agreements that are directly or indirectly connected with Kwik Lok's violations of Wisconsin's antitrust laws.

23

83.    Specifically, Kwik Lok intentionally monopolized or attempted to monopolize the Plastic Bag-Closures Market. As described above, Kwik Lok, among other things, engaged in patent misuse and falsely suggested to the public that its products were legally protected despite Kwik Lok's loss of patent protections, wrongfully misused the federal trademark registration process and coerced the sellers of its products into signing distribution agreements with unlawful and unreasonable restrictive covenants to prevent competition, artificially influence demand and prevent competitors from entering into the Plastic Bag-Closures Market. Kwik Lok has engaged in an illegal scheme of unfair, exclusionary and anti-competitive acts with the express intent to maintain its monopoly over the Plastic Bag-Closures Market. Kwik Lok's actions sought or accomplished improper monopolization, and have created a dangerous probability of success in monopolizing the Plastic Bag-Closures Market for years to come.

84.    The illegal maintenance of Kwik Lok's monopoly power is distinguishable from growth or development as a consequence of a superior product, business acumen, or historic accident.

85.    While engaged in conduct prohibited by Wis. Stat. § 133.03, Kwik Lok made contracts or agreements to sell Kwik Lok products that were purchased by Volm, and those agreements, either directly or indirectly, were the result of, grew out of or were connected with one or more violations of Wis. Stat. § 133.03.

86.    Volm paid Kwik Lok for the products, and Kwik Lok benefitted from the payments made by Volm pursuant to its contracts or agreements with Kwik Lok for the sale of Kwik Lok products.

87.    Kwik Lok, through its actions, has harmed and restrained competition, put competitors and purchasers of plastic bag-closures at a significant non-reputation-related

disadvantage through this illegal scheme, and has substantially affected, impacted and damaged numerous Wisconsin businesses, Wisconsin consumers and the people of Wisconsin, including Volm and many others, through its illegal conduct, by controlling or artificially influencing the price of plastic bag-closures in Wisconsin. Kwik Lok's conduct prevented full and free competition in the Plastic Bag-Closures Market, reduced competition, innovation and consumer choice, and tended to advance, control and raise the market prices of plastic bag-closures in Wisconsin and harmed Wisconsin purchasers. Kwik Lok's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable anti-competitive effect on commerce in Wisconsin. In addition, a significant part of the anti-competitive conduct Kwik Lok engaged in occurred in Wisconsin.

88.    Kwik Lok's actions have also deprived Volm, among other things, of the right and ability to make efficient investment, resource allegation and other financial decisions related to plastic bag-closures, in a full and free competitive market.

89.    Because of Kwik Lok's violations of Wis. Stat. § 133.03, the contracts or agreements Kwik Lok entered into with Volm, which contracts or agreements were directly or indirectly founded upon, are the result of, or which grew out of or were connected with Kwik Lok's combinations in violation of Wis. Stat. § 133.03, are void under the first sentence of Wis. Stat. § 133.14. Further, under the second sentence of Wis. Stat. § 133.14, Volm is entitled to recover from Kwik Lok in this action its payments to Kwik Lok or to Kwik Lok's benefit that were made upon, under or pursuant to contracts or agreements Volm entered into with Kwik Lok that are directly or indirectly connected to Kwik Lok's anti-competitive conduct in violation of Wisconsin's antitrust laws.

## COUNT V
## WIS. STAT. § 133.18 CLAIM

90.    Volm repeats and realleges the allegations contained in paragraphs 1 through 89 of this Amended Complaint as if fully set forth herein.

91.    In addition to the full consideration cause of action, Wisconsin antitrust laws allow for recovery of treble the overcharge caused by a violation of Wisconsin's antitrust laws. Wis. Stat. § 133.18 provides:

> any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees. Any recovery of treble damages shall, after trebling, be reduced by any payments actually recovered under s. 133.14 for the same injury.

92.    As detailed above, Kwik Lok engaged in conduct prohibited by Wis. Stat. § 133.03, including among other things by monopolizing or attempting to monopolize the Plastic Bag-Closures Market in the United States.

93.    Volm was injured, directly or indirectly, by Kwik Lok's violations of Wisconsin's antitrust laws, including because Volm (along with other Wisconsin purchasers) paid higher prices for Kwik Lok's products than they would have paid if Kwik Lok had not monopolized or attempted to monopolize the Plastic Bag-Closures Market in the United States.

94.    Accordingly, Volm is entitled to recover three times the overcharges caused by Kwik Lok's violations of Wisconsin's antitrust laws, plus attorneys' fees, the cost of suit, and interest.

## COUNT VI
## DECLARATORY JUDGMENT PURSUANT TO WIS. STAT. § 806.04

95.    Volm repeats and realleges the allegations contained in paragraphs 1 through 94 of this Amended Complaint as if fully set forth herein.

26

96.    Kwik Lok has asserted that the Distribution Agreement has post-termination provisions that remain in effect, including but not limited to non-solicitation, non-competition and non-disclosure provisions.

97.    Volm asserts that the Distribution Agreement is unenforceable, among other reasons, because it is the product of duress, is unconscionable, unreasonable, lacks sufficient supporting consideration, and is void for violation of public policy, including because it was designed to and did further improper monopolization and an illegal restraint of trade.

98.    There is a real, substantial, justiciable and continuing controversy between Volm and Kwik Lok regarding the legality of the Distribution Agreement and its enforceability under Wisconsin law, including as to its post-termination provisions creating unlawful restraints on Volm.

99.    This controversy exists between parties whose interests are adverse.

100.    The parties have a legal interest in the controversy because Volm has a legally protectable interest in information related to its customers and its ability to provide its actual and prospective customers with products competitive to Kwik Lok's products, and Kwik Lok has advised Volm that the post-termination provisions of the Distribution Agreement are enforceable and continue to bind Volm.

101.    The legal issues involved in the controversy are ripe for judicial determination.

102.    A declaration of rights is both necessary and appropriate to establish that Volm has an unfettered right to do business with its customers and prospective customers and to assist them in obtaining products other than through Kwik Lok.

103.     Accordingly, Volm is entitled to a declaration under Wis. Stat. § 806.04, as a matter of law, that the Distribution Agreement, including its post-termination provisions, is void and unenforceable.

**COUNT VII**
**CONVERSION**

104.     Volm repeats and realleges the allegations in paragraphs 1 through 103 of this Amended Complaint as if fully set forth herein.

105.     Volm owns certain property, including but not limited to the Kroger Artwork.

106.     Kwik Lok has intentionally and without Volm's consent taken property belonging to Volm (including the Kroger Artwork), and seriously interfered with the right of Volm to possess the property.

107.     As a result of Kwik Lok's wrongful conversion, Volm has been damaged in an amount to be determined at trial.

108.     Kwik Lok has acted maliciously towards Volm and in an intentional disregard of Volm's rights, and Volm is entitled to punitive damages in an amount to be determined at trial.

**COUNT VIII**
**WIS. STAT. § 100.18 CLAIM**

109.     Volm repeats and realleges the allegations in paragraphs 1 through 108 of this Amended Complaint as if fully set forth herein.

110.     Kwik Lok has made false statements of fact, including but not limited to that its products were legally protected after its patents had expired, that the shape of its plastic bag closures were arbitrary and non-functional and therefore protected by trademark law (when in fact they were functional and served to prevent entry into the Plastic Bag-Closure Market), with the

28

intent to induce Volm to enter into the Distribution Agreement and continue to buy products from Kwik Lok on unreasonable and unenforceable terms.

111.    Because of the untrue, deceptive, and misleading representations and other improper conduct by Kwik Lok, Volm entered into the Distribution Agreement and continued to buy products from Kwik Lok on harsh and oppressive terms, and declined to pursue market alternatives. Had Volm known the true state of Kwik Lok's intellectual property rights, and Kwik Lok's improper efforts to extend its monopoly, Volm would not have entered into the Distribution Agreement and continued to buy products from Kwik Lok.

112.    Kwik Lok's actions constitute a violation of the Wisconsin Deceptive Trade Practices Act, codified at Wis. Stat. § 100.18.

113.     By virtue of Kwik Lok's violations of Wis. Stat. § 100.18., Volm has been damaged, in an amount to be determined at trial.

114.    Wis. Stat § 100.18 allows injured parties to recover costs and reasonable attorneys' fees in any action to redress a violation, and Volm is entitled to its costs and reasonable attorneys' fees in pursuing this action.

**COUNT IX**
**INTENTIONAL MISPRERESENTATION**

115.    Volm repeats and realleges the allegations in paragraphs 1 through 114 of this Amended Complaint as if fully set forth herein.

116.    Kwik Lok made false representations of fact, including the statements detailed above, regarding the state of its intellectual property rights concerning its products.

117.    These untrue factual representations, including but not limited to the statements alleged above, were made by Kwik Lok with knowledge of their falsehood or with a reckless disregard as to whether they were true or false.

29

118.    Kwik Lok made these misrepresentations with the intent to deceive and defraud Volm and to induce Volm to enter into the Distribution Agreement and continue to buy products from Kwik Lok on unreasonable and unenforceable terms.

119.    Volm believed Kwik Lok's representations and reasonably relied on them as true in deciding to enter into the Distribution Agreement and continue to buy products from Kwik Lok on such harsh and oppressive terms.

120.    These actions constitute intentional misrepresentations on the part of Kwik Lok.

121.    As a result of Kwik Lok's intentional misrepresentations, Volm has been damaged, in an amount to be determined at trial.

122.    Kwik Lok has acted maliciously towards Volm and in an intentional disregard of Volm's rights, and Volm is entitled to punitive damages in an amount to be determined at trial.

## COUNT X
## STRICT LIABILITY MISREPRESENTATION

123.    Volm repeats and realleges the allegations in paragraphs 1 through 122 of this Amended Complaint as if fully set forth herein.

124.    Kwik Lok made false representations of fact, including the misrepresentations described above, on Kwik Lok's personal knowledge or under circumstances in which Kwik Lok necessarily ought to have known the truth or untruth of its representations of fact, including but not limited to with respect to the status of Kwik Lok's patents and whether the shapes of Kwik Lok's plastic bag-closures were non-functional and therefore entitled to trademark protection.

125.    Kwik Lok had an economic interest in the transactions in connection with which it made these misrepresentations of fact, and expected to gain some economic benefit from these transactions.

126.    Kwik Lok made these misrepresentations with the intent to deceive and defraud Volm and to induce Volm to enter into the Distribution Agreement and continue to buy products from Kwik Lok on unreasonable and unenforceable terms.

127.    Volm believed Kwik Lok's representations and reasonably relied on them as true in deciding to enter into the Distribution Agreement and continue to buy products from Kwik Lok on such harsh and oppressive terms.

128.    These actions constitute strict liability misrepresentations on the part of Kwik Lok.

129.    As a result of Kwik Lok's strict liability misrepresentations, Volm has been damaged, in an amount to be determined at trial.

130.    Kwik Lok has acted maliciously towards Volm and in an intentional disregard of Volm's rights, and Volm is entitled to punitive damages in an amount to be determined at trial.

## RESERVATION OF RIGHTS

Volm expressly reserves the right to bring additional claims after further investigation and discovery.

**WHEREFORE**, Volm demands judgment, jointly and severally against all Defendants:

A.    For compensatory damages in an amount to be determined at trial;

B.    For consequential damages in an amount to be determined at trial;

C.    For punitive damages in an amount to be determined at trial;

D.    For a judgment, pursuant to Wis. Stat. § 133.14, that: (i) the contracts or agreements Volm entered into with Kwik Lok while Kwik Lok was in violation of Wis. Stat. § 133.03 are void; and (ii) that Kwik Lok is liable to Volm for repayment of all amounts that Volm paid Kwik Lok (or for which Kwik Lok benefited) under all such void contracts or agreements, in an amount to be determined at trial;

E.    For a judgment, pursuant to Wis. Stat. § 133.18, awarding Volm three times the overcharge caused by Kwik Lok's violations of Wisconsin's antitrust laws, reduced after trebling by any amount actually recovered by Volm under Wis. Stat. § 133.14 for the same injury;

31

F.     For a declaratory judgment that the Distribution Agreement, including its post-termination provisions, is unenforceable;

G.     For Volm's attorneys' fees, expenses, costs and disbursements in this action;

H.     For pre-judgment and post-judgment interest in the full amount permitted by law; and

I.     For such other and further relief as the Court deems just and equitable.

## REQUEST FOR EXPEDITED PROCEEDINGS

Wis. Stat. § 133.18(5) provides:

> Each civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date.

Pursuant to Wis. Stat. § 133.18(5), Volm requests that this action and all motions and proceedings in this action be expedited, consistent with the intent and the remedial goals of the Wisconsin legislature as expressed in Wis. Stat. §§ 133.01 and 133.18(5).

## JURY DEMAND

Volm demands a trial by jury on all counts so triable.

Dated this 18th day of January, 2019.

By:     Electronically signed by Atty. Ryan M. Billings
Robert L. Gegios
State Bar No. 1002906
Ryan M. Billings,
State Bar No. 1084543
**KOHNER, MANN & KAILAS, S.C.**
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:     (414) 962-5110
Facsimile:     (414) 962-8725
Email:          rgegios@kmksc.com
                rbillings@kmksc.com

*Attorneys for Plaintiff Volm Companies, Incorporated*

32