# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

VOLM COMPANIES, INCORPORATED,

        Plaintiff,

        v.                                Case No.  19-C-244

KWIK LOK CORPORATION,
an Indiana Corporation, and

KWIK LOK CORPORATION,
a Washington Corporation,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Volm Companies, Incorporated (Volm) commenced this action against Kwik Lok Corporation (Indiana) and Kwik Lok Corporation (Washington) (collectively, Kwik Lok) in Langlade County Circuit Court, alleging breach of contract, breach of covenant of good faith and fair dealing, tortious interference, conversion, two anti-competition claims, and three misrepresentation claims.   Volm also seeks a declaratory judgment voiding its distribution agreement with Kwik Lok.  Kwik Lok removed the case to this court.  The court has jurisdiction under 28 U.S.C. § 1332.  Presently before the court are Kwik Lok's motions to dismiss the complaint for improper venue and to seal documents.  Having considered the parties' briefs and oral arguments, and for the reasons stated below, Kwik Lok's motion to dismiss will be granted and its motion to seal will be granted in part.

## LEGAL STANDARD

"A motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)); Fed. R. Civ. P. 12(b)(3). "[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." *Faulkenberg*, 637 F.3d at 808. When faced with a Rule 12(b)(3) motion, the court "assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.*

## ALLEGATIONS OF THE AMENDED COMPLAINT

Volm provides packaging and equipment solutions for a wide variety of products, such as potatoes, onions, citrus, and other produce. Volm manufactures plastic bags that are closed via Kwik Lok machines and bag-closures as well as machines that sort, weigh, fill, and convey products through Kwik Lok machines. Kwik Lok manufactures plastic bag-closures and machines that automatically apply plastic bag-closures to bags. Together, Volm and Kwik Lok's machines and products are a complete automatic-packing solution for Volm's customers. Volm began working with Kwik Lok in the late 1980s, and the relationship was successful over the course of more than twenty-five years.

2

Through a series of patents, Kwik Lok maintained a monopoly over the plastic bag-closures market for decades. Even after those patents expired and in an attempt to prolong its monopoly, Kwik Lok allegedly misrepresented to the public, through website statements and other means, that its plastic bag-closures and automatic bag-closure machines were patent-protected. In a further anti-competitive effort, Kwik Lok registered a trademark on what resembled a plastic square with an opening through which a bag is closed.

In 2012, Schutte Bagclosures Inc. (Schutte), a subsidiary of a Dutch company that sells plastic bag-closures in Europe, sued Kwik Lok in the United States District Court for the Southern District of New York, seeking a declaratory judgment that Kwik Lok's bag-closure trademark was invalid (SDNY Litigation). On June 14, 2016, in an Opinion and Order that followed a five-day bench trial, the *Schutte* court set forth findings of fact and conclusions of law. *See Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245 (S.D.N.Y. 2016). The court found, among other things, that "Kwik Lok is the only company in the United States that produces and sells re-usable sheet plastic closures that run through an automatic closing machine." *Id.* at 252. Regarding Kwik Lok's trademark, the court concluded as a matter of law that "Kwik Lok's claimed trade dress configurations are functional and therefore unprotectable." *Id.* at 273.

Faced with the prospect of competition in the United States after the SDNY Litigation, Kwik Lok allegedly took steps to continue its monopoly by requiring its independent distributors, with whom Kwik Lok had not previously had formal contracts and from whom Kwik Lok achieved a strong majority of its sales, *see id.* at 254, to enter into formal distribution agreements. Under the previous informal agreements, distributors were not prohibited by contract from selling products

3

competitive to Kwik Lok's products. In June 2016 in Antigo, Wisconsin, Kwik Lok met with Volm, presented Volm with a lengthy contract, and asked Volm to sign within a short time.

According to Volm, the terms of the contract were unreasonable and one-sided. Among other things, the contract included non-compete, non-solicitation, and non-disclosure provisions, all of which were to survive termination of the contract, and the non-disclosure period never expired. Kwik Lok told Volm that it was asking all of its distributors to sign such contracts and that Volm would no longer be allowed to buy Kwik Lok products if Volm did not sign. Volm alleges that because Kwik Lok had a monopoly over the U.S. plastic bag-closure market, every company that used plastic bag-closures was an actual or potential Kwik Lok customer. Kwik Lok's labeling of every actual and potential Kwik Lok customer as "Confidential" information subject to the non-disclosure provision in the contract was, Volm alleges, a monopolistic tactic aimed at permanently preventing Volm or other distributors from contacting all actual or potential customers in the entire U.S. plastic bag-closure market. Dkt. No. 1-2 at ¶¶ 34–35. Volm alleges that Kwik Lok's anti-competitive intent concerning the distribution agreements is transparent from their timing: the *Schutte* court's Opinion and Order was dated June 14, 2016, and the contract presented to Volm specified that it was to become effective the next day, on June 15, 2016.

Volm requested meetings and negotiations with Kwik Lok to attempt to revise the proposed contract's terms. Although Kwik Lok agreed to make a few changes, it did not budge on the material aspects of the non-compete, non-solicitation, and non-disclosure provisions. Eventually, Kwik Lok told Volm that it was not interested in any more changes and that Volm could either sign the agreement or stop selling Kwik Lok products. Given Kwik Lok's 54-year monopoly and Volm's heavy investment in Kwik Lok products, Volm found itself between the devil and the deep blue sea:

4

either sign the contract it considered unreasonable or exit the bag-closure business, abandoning Volm's customers and cutting Volm and its customers off from any supply of plastic bag-closures and closure machines. Also weighing on Volm was its proximity to heavy-packing season, which required that Volm place large orders with Kwik Lok to meet Volm's customers' needs.

Volm reluctantly signed the contract, effective October 1, 2016 (Distribution Agreement). *Id.* at ¶ 39. The Distribution Agreement was substantially similar to the draft contract presented in June 2016 in terms of the non-compete, non-solicitation, and non-disclosure provisions. It had a two-year, auto-renewing term, and for three years after termination, Volm was not permitted to directly or indirectly manufacture plastic bag-closures or machinery that closes bags using the bag-closures. Nor was Volm permitted in the three-year, post-termination period to directly or indirectly contact any known former or current Kwik Lok vendors or suppliers for plastic bag-closures or closure machinery. The non-disclosure provision in conjunction with the contract's "subversive" definition of "Confidential Information," Volm claims, had the effect of preventing Volm from dealing in any way with any company that had ever bought or could potentially buy a plastic bag-closure or closure machine. *Id.* at ¶ 43.

When approaching the expiration of the two-year term on October 1, 2018, Volm informed Kwik Lok that it would not renew the contract as written and that it was interested in negotiating another agreement. After the Distribution Agreement was terminated, Kwik Lok briefly sold products to Volm under the parties' pre–Distribution Agreement, handshake agreement. Kwik Lok rejected a contract Volm proposed and then gave Volm two days to re-sign the original Distribution Agreement. Before the two-day period expired, Kwik Lok terminated its sales relationship with Volm.

5

On December 20, 2018, Kwik Lok sent Volm an email, informing Volm that Kwik Lok would honor any orders Volm placed that day, but would not thereafter fulfill any of Volm's purchase orders. In response and on the same day, Volm sent Kwik Lok $430,376.13 worth of purchase orders, but Kwik Lok refused to fulfill them. Volm also alleges that Kwik Lok refuses to return its property—artwork applied to plastic Kwik Lok closures Volm sold to Kroger (Kroger Artwork). Volm alleges that it paid for and owns the Kroger Artwork, but Kwik Lok refuses to return it given the termination of Volm and Kwik Lok's business relationship.

## ANALYSIS

### A. Motion to Dismiss for Improper Venue

Section 18.2 of the parties' October 1, 2016 Distribution Agreement contains the following arbitration provision:

> In the event that any dispute *relating to or arising from this Agreement* cannot be settled by the Parties, it shall be resolved by binding arbitration to be conducted in Seattle, King County, Washington. A Party may initiate arbitration of a dispute by serving the other Party with a written demand for arbitration, describing the dispute and identifying the relief sought with respect to it. Within twenty (20) days following service of a written demand for arbitration, the Parties involved in the dispute shall attempt to reach agreement upon the selection of a qualified impartial arbitrator. If the Parties cannot agree upon an arbitrator within twenty (20) days from the date written demand for arbitration is served, the Party demanding arbitration may commence an action for the limited purpose of obtaining appointment of an arbitrator by the Presiding Judge of the Superior Court of the State of Washington for King County. The arbitration shall be conducted in accordance with the provisions of the Uniform Arbitration Act, RCW Chapter 7.04A. The arbitrator may grant injunctive or other relief as part of an interim or final award. Any arbitration award may be enforced by judgment entered in the Superior Court of the State of Washington for King County.

Dkt No. 20-1 at ¶ 18.2 (emphasis added). Based on this provision, Kwik Lok's basis for dismissal is simple: each of Volm's claims relates to or arises from the Distribution Agreement and is

6

therefore subject to arbitration in Seattle, Washington. If Kwik Lok is correct, then Volm filed this action in the wrong venue.

The Federal Arbitration Act (FAA) embodies a national policy favoring arbitration, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015)); 9 U.S.C. § 2. When facing a Rule 12(b)(3) motion to dismiss for improper venue under an arbitration provision, the court must examine (1) whether a valid arbitration agreement exists and, if so, (2) whether the plaintiff's claims fall within the arbitration agreement's scope. *See Faulkenberg*, 637 F.3d at 809, 811. "[O]nce an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000) (citations omitted).

Volm argues that Kwik Lok's motion should be denied for three independent reasons: (1) the Distribution Agreement expired and Volm raises no claim of performance under that Agreement; (2) no valid arbitration agreement exists; and (3) none of Volm's claims fall under the (expired and invalid) arbitration clause. Regarding the first reason (expiration), Volm cites *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989 (7th Cir. 2007), and *Roberts Irrigation Co. v. Hortau Corp.*, No. 16cv-0028-slc, 2016 WL 3440623 (W.D. Wis. June 20, 2016), to argue that Volm's claims are not arbitrable because the Distribution Agreement and the arbitration clause therein expired upon the Agreement's termination and the parties did not agree

7

to arbitrate post-termination disputes. Kwik Lok counters that Section 13.6 of the Distribution Agreement expressly provides that the arbitration provision survives termination of the Agreement. Section 13.6 reads: "Notwithstanding the termination or expiration of this Agreement, all rights and obligations of the Parties, which by their nature should survive the termination or expiration of this Agreement, including those established pursuant to Section[] . . . 18.2 shall survive the termination or expiration of the Agreement." Dkt. No. 20-1 at ¶ 13.6.

Under the plain language of Section 13.6 of the Distribution Agreement, the arbitration provision survived the Distribution Agreement's termination. Unlike in *Nissan*, here, there is an express written agreement that the rights and obligations under the arbitration provision "shall survive" the Distribution Agreement's termination or expiration. *See* 486 F.3d at 994–95 ("The salient fact is that there is no evidence of a written agreement to arbitrate that survived the expiration of Amendment 4 [which contained the arbitration provision].").  This fact also distinguishes the case from *Roberts*, which involved a more narrow arbitration provision that did not include any indication that the provision survived the contract's termination. *See* 2016 WL 3440623, at *5.  As written, then, the arbitration provision in Volm and Kwik Lok's Distribution Agreement survives its termination. Dkt. No. 20-1 at ¶ 13.6.

Volm also relies on *Roberts* to argue that its claims are not arbitrable because none of them concern performance under the Distribution Agreement. But the arbitration provision in *Roberts*, which applied to "[a]ny dispute which arises in the course of or following the performance of the present contract," 2016 WL 3440623, at *5, was more narrow than the provision here and focused on performance of the contract. The parties in this action contracted to arbitrate "any dispute relating to or arising from this Agreement," which may cover claims even if they do not challenge

8

the validity of the contract or raise issues of contract interpretation or performance. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993); *see also Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (noting that in circumstances where a contract requires that "all controversies and claims" either "arising out of" or "relating to" the contract be arbitrated, "we have naturally been willing to read these admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance"). The breadth of this provision does not limit its application to only issues relating to performance of the contract.

Volm's second argument is that no valid arbitration agreement exists. The crux of this argument is that Volm's antitrust claims could render the Distribution Agreement and the arbitration provision void. In support, Volm cites Wisconsin Statute § 133.14, which states in relevant part:

> All contracts or agreements made by any person while a member of any combination or conspiracy prohibited by s. 133.03, and which contract or agreement is founded upon, is the result of, grows out of or is connected with any violation of such section, either directly or indirectly, shall be void and no recovery thereon or benefit therefrom may be had by or for such person.

Wis. Stat. § 133.14 (2017–18). Volm argues that Kwik Lok's decision to have its distributors (and Volm) sign "oppressive" contracts was but one of several anti-competitive actions it took to further its monopoly over the plastic bag-closures market in violation of Wisconsin's antitrust laws. Pl.'s Br. Opp'n, Dkt. No. 23, at 22–23. According to Volm, the combination of the SDNY Litigation, the Distribution Agreement's "terminated" arbitration clause, and Kwik Lok's monopolization efforts as alleged in the complaint "easily satisfies" the standard in § 133.14. *Id.* at 24–25. Kwik Lok argues that Volm cannot avoid enforcement of the arbitration provision merely by raising a

9

claim about the Distribution Agreement as a whole. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 406 (1967). Moreover, Kwik Lok contends that Volm cannot avoid its duty to arbitrate merely by raising antitrust claims, which are themselves arbitrable under the FAA. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985); *Kotam Elecs., Inc. v. JBL Consumer Prods., Inc.*, 93 F.3d 724, 728 (11th Cir. 1996) (holding that arbitration agreements concerning domestic antitrust claims are enforceable).

Volm contends that it satisfies the standard in *Prima Paint* because it challenges the validity of the arbitration provision itself, "specifically and standing alone." *See* Dkt. No. 24 at 2 and n.3; Dkt. No. 16 at 24; *Prima Paint*, 388 U.S. at 403–04, 406 (distinguishing validity-based claims raised against an arbitration clause itself, which must be decided by a federal court, from claims against the contract as a whole, which are arbitrable). In its opposition brief, Volm states that, "considered by themselves without reference to the other language of the Distribution Agreement," the "venue clauses," by which it means Sections 18.1 and 18.2, Dkt. No. 16 at 13, are "void under Wisconsin law because they are connected with Kwik Lok's improper monopolization scheme." Dkt. No. 16 at 24. Volm explains that the connection between Kwik Lok's trademark strategy, the SDNY Litigation, the arbitration provision, and Kwik Lok's monopolization efforts is clear and satisfies the standard in § 133.14 that contracts "connected with" a violation of Wisconsin's antitrust laws, "either directly or indirectly," are void. *Id.* at 24–25. Volm argues this challenge to the validity of the arbitration provision is sufficient to satisfy Volm's burden under *Prima Paint* and its progeny. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (citing *Prima Paint* in support of principle that federal courts must consider precise challenges to arbitration provisions before ordering compliance with such provisions); *Buckeye Check Cashing, Inc. v. Cardegna*, 546

10

U.S. 440, 445–46 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Kwik Lok claims that Volm attacks only the validity of the entire Distribution Agreement. To support its claim, Kwik Lok cites Volm's opposition brief, which reads: "[T]he Court may also independently deny Kwik Lok's motion because the terminated Distribution Agreement, including its expired venue provisions, is void under Wisconsin law." Dkt. No. 19 at 9 and n.3; Dkt. No. 16 at 21. A similar statement is present in Volm's complaint. Dkt. No. 1-2 at ¶ 103. Despite Volm's separate statements regarding the arbitration clause itself, cited above, Kwik Lok argues that Volm is really attacking the Distribution Agreement as a whole, and the validity of the arbitration clause is tied to the validity of the entire Agreement. To be sure, Kwik Lok is justified in its position that Volm appears exclusively focused on the invalidity of the entire Agreement instead of the arbitration clause. Volm's complaint confirms Kwik Lok's suspicion, as the complaint only challenges the Agreement as a whole, and to the extent specific provisions of the Agreement are mentioned, Volm fixates on the non-compete, non-solicitation, and non-disclosure provisions. *Id.* at ¶¶ 33, 37, 40–44, 96–98, 103. Not once does the complaint specifically identify and take issue with the arbitration provision. Volm even raises a separate cause of action that seeks to render the entire Agreement, not merely the arbitration provision, standing alone, void.

But courts have looked beyond the complaint to identify challenges to the validity of arbitration provisions. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 72–73 (examining briefs and oral arguments to determine whether party opposing a motion to dismiss under the FAA specifically challenged a threshold agreement to arbitrate); *see also Johnson v. W. & S. Life Ins. Co.*, 598 F.

11

App'x 454, 455–56 (7th Cir. 2015) (examining appeal brief); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.,* 867 F.3d 449, 456 (4th Cir. 2017) (rejecting the argument that allegations in complaint control the arbitrability inquiry under *Rent-A-Center* because "a defendant who seeks to compel arbitration under the [FAA] bears the burden of establishing the existence of a binding contract to arbitrate the dispute" and "until a defendant moves to compel arbitration, there is no reason for a plaintiff to assert any grounds for disregarding an arbitration agreement"); *but see Buckeye*, 546 U.S. at 444, 446 (considering only the "crux of the complaint" in deciding that party failed to specifically challenge arbitration provision); *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) (examining the complaint's allegations in the fraudulent inducement context). Some courts have considered both the complaint's allegations and the opposing party's brief, as if either would be sufficient to challenge the validity of the arbitration provision itself. *See, e.g.*, *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550 (7th Cir. 2000).

Despite Volm's focus on the entire Distribution Agreement in its complaint, its independent challenge to the arbitration clause raised in its opposition brief and repeated during oral argument is sufficient to require the court, rather than an arbitrator, to address the validity of the arbitration clause. *See Rent-A-Center*, 561 U.S. at 72–74. Volm's theory challenging the arbitration provision is straightforward: Volm argues that Kwik Lok's actions after its bag-closure patents expired—including representing that its bag-closures were still patent-protected, its registration of a trademark that was later declared functional and unenforceable, and its post–SDNY Litigation decision to present oppressive contracts to its distributors, among other things—violate Wisconsin's antitrust laws, and that, as a consequence, the arbitration clause in the Distribution Agreement is void under Wis. Stat. § 133.14 because it "directly or indirectly" relates to the antitrust violations.

12

That the whole Distribution Agreement would be void for the same reasons does not mean that Volm fails to raise an independent challenge to the arbitration clause.

The cases Kwik Lok relies upon in reply are distinguishable. Several such cases involve no direct challenges to the arbitration provision itself. For example, in *Harter v. Iowa Grain Co.*, the court found that, "[n]either Harter's complaint nor his motion opposing compelled arbitration alleges that the arbitration provisions *themselves* were the product of fraud, inadequate consideration or the like. Instead, he attacks the legality of each contract as a whole." 220 F.3d at 550. Similarly, in *Parkland Environmental Group, Inc. v. Laborers' International Union of North America*, the court noted that, "[r]ather than challenge the scope of the arbitration clause, Parkland focuses its argument on the validity and scope of the agreement in the first place." 390 F. App'x 574, 576 (7th Cir. 2010). Unlike in *Harter* and *Parkland*, here, Volm raises a challenge that is particularized to the arbitration provision itself.

Kwik Lok's reliance on *Nitro-Lift Technologies, L.L.C. v. Howard* is likewise misplaced. 568 U.S. 17 (2012). There, the Court vacated the Oklahoma Supreme Court's judgment that declared certain non-competition agreements void under a state statute. *Id.* at 21. The Court held that the Oklahoma Supreme Court erroneously "assumed the arbitrator's role by declaring the noncompetition agreements null and void," notwithstanding the fact that "[t]he trial court found that the contract contained a valid arbitration clause, and the Oklahoma Supreme Court did not hold otherwise." *Id.* The Court ultimately determined that "it is for the arbitrator to decide in the first instance whether the covenants not to compete are valid as a matter of applicable state law." *Id.* at 22. *Nitro-Lift* addresses an entirely different issue from the case at hand. *Nitro-Lift* concerned the Oklahoma Supreme Court's assumption of the arbitrator's role after the validity of an arbitration

13

clause was already established. Here, the issue of the validity of the arbitration clause in the Distribution Agreement has not been previously decided; that is a question the court must decide when the arbitration clause is specifically challenged. *See Rent-A-Center*, 561 U.S. at 72–74. *Nitro-Lift* therefore has no bearing on this case.

Because Volm raises a challenge specific to the arbitration provision, the court will proceed to the narrow question of whether the agreement to arbitrate is invalid. *Dries v. Onebeacon Am. Ins. Co.*, No. 15-cv-233-wmc, 2016 WL 755655, at *5 (W.D. Wis. Feb. 25, 2016); *Williams. v. CashCall, Inc.*, 92 F. Supp. 3d 847, 851 (E.D. Wis. 2015). In the end, however, this does not aid Volm. Volm's challenge to the arbitration clause rests on Wisconsin Statute § 133.14. Volm argues that the arbitration provision is void because it is "connected with Kwik Lok's improper monopolization scheme." Dkt. No. 16 at 24. Kwik Lok, Volm explains, "abus[ed] its monopoly power to force all its many distribution sources to sign agreements like Volm's (effective June 15, 2016, the day after the *Schutte* decision was entered), with language providing that any disputes arising from or relating to the parties' dealings under the contract must be resolved in private arbitration with no collateral estoppel effect." *Id.* Volm argues that the connection between the arbitration clause and Kwik Lok's monopolization efforts is "clear." *Id.* at 25.

These arguments ring hollow. Although Volm conclusively states that the arbitration provision is "connected with" Kwik Lok's monopolization scheme, it fails to explain how the two are connected. Keeping in mind that arbitration agreements are "on an equal footing with other contracts," *Rent-A-Center*, 561 U.S. at 67, and are independently valid and enforceable, 9 U.S.C. § 2, Volm must demonstrate that the arbitration provision itself, wholly apart from the Distribution Agreement as a whole, is invalid because it is connected with a violation of § 133.03, which

14

prohibits restraints of trade or commerce and the use of monopolization tactics. *See Buckeye*, 546 U.S. at 445; *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91–92. Volm offers only conclusory statements with respect to the arbitration clause, which are insufficient to establish the clause's invalidity.

Volm only contends that Kwik Lok "forced" it and other distributors to sign contracts like the Distribution Agreement, *see* Dkt. Nos. 16 at 8, 24; 1-2 at ¶ 45, which contained "onerous and unreasonable non-compete, non-solicitation and non-disclosure provisions" that would, in effect, be the "death knell of any company that considered ending its relationship with Kwik Lok and working with a competitor." *Id.* at ¶¶ 37–44. In other words, to Volm, what made the Distribution Agreement anti-competitive were the non-compete, non-solicitation, and non-disclosure provisions, and Volm's complaint suggests that were it not for "the duress of Kwik Lok's monopoly power and Kwik Lok's decision to present the contract at a time of most pressing need," *id.* at ¶ 39, Volm would not have signed the contract. But Volm neither claims that it was induced into signing the arbitration provision itself nor that the arbitration provision was anti-competitive or otherwise restrained trade or commerce.

Because arbitration provisions are severable from the remainder of the contract and are independently valid, *Buckeye*, 546 U.S. at 445, even the arbitration clause's presence in the Distribution Agreement, which Volm claims it was forced to sign, is insufficient to establish a connection to a violation of § 133.03, whether direct or indirect. Even though the argument that the arbitration clause was indirectly connected to anti-competitive conduct vis-à-vis its presence in the Distribution Agreement lacks merit, Volm did not make such an argument. That the arbitration provision is entirely separable from any potential violation of § 133.03 is further evidenced in the

provision's text.  Not only does the provision call for the parties to agree on a qualified, impartial arbitrator or to have a state court appoint an arbitrator in case the parties cannot agree, but it also allows either party to invoke arbitration to settle a dispute.  Dkt. No. 20-1 at 11.  Volm's failure to demonstrate the arbitration provision's connection to a purported violation of § 133.03 defeats its argument as to the provision's invalidity under § 133.14, and therefore the court is satisfied that the provision is valid.  The court is also satisfied, and Volm does not dispute, that the basic elements of contract formation are met with respect to the Agreement and arbitration provision.  *See* Dkt. No. 1-2 at ¶ 39.

Volm's third argument for dismissal of Kwik Lok's motion to dismiss is that none of its claims arise from or relate to the Distribution Agreement.  This argument concerns the scope of the arbitration provision.  As a matter of federal law, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration."  *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).  "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).  "Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause.  Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims."  *In re Oil Spill by Amoco Cadiz Off Coast of Fr. Mar. 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981) (citation omitted).

16

Each of Volm's claims arises from or relates to the Distribution Agreement. Count I concerns Kwik Lok's refusal to fulfill Volm's December 20, 2018 purchase orders despite sending Volm an email stating that it would fulfill purchase orders sent on that date. The Distribution Agreement terminated by its terms on October 1, 2018, and the parties attempted to negotiate a new agreement over the ensuing two-and-one-half months. Volm confirmed during oral argument that, during this period, the parties used the same pricing as was used under the Agreement. Eventually, on December 19, 2018, Kwik Lok informed Volm that it was terminating all relations. Although Volm and Kwik Lok's business relationship officially ended on December 19th, Volm's claim concerning an email sent the next day about purchase orders that concerned the same products and pricing used under the Agreement falls on the heels of the Agreement and easily falls within the arbitration clause's broad language. *See Sweet Dreams*, 1 F.3d at 643–44 (applying the "arising out of" language to a post-termination dispute that came "on the heels of the Agreement"). For the same reasons, Count II, a claim of breach of the duty of good faith and fair dealing, which concerns in part Kwik Lok's December 20th email, must also be arbitrated.

Count III, a tortious interference claim, concerns Kwik Lok informing Volm's customers that they cannot purchase Volm's inventory of Kwik Lok products and Volm that its technicians cannot service Kwik Lok machines. Like Count I, this claim concerns conduct that took place on the heels of the Distribution Agreement, and it also concerns products sold and customers served under the Agreement. *See id.*; *see also Welborn Clinic*, 301 F.3d at 639. This claim relates to the rights of Volm and its customers in the wake of and in light of the terminated Distribution Agreement, and the dispute centers around the Agreement's subject matter. *See In re Oil Spill*, 659 F.2d at 794. Count III is therefore arbitrable.

17

Counts IV and V concern Kwik Lok's alleged antitrust violations under Wisconsin law. Volm alleges that Kwik Lok's decision to have Volm and other distributors sign agreements like the Distribution Agreement was one of several anti-competitive actions it took in furtherance of its monopoly. As a large part of Kwik Lok's alleged anti-competitive conduct stems from the Agreement, Volm's antitrust claims arise from and relate to the Agreement. That Volm seeks to use the Agreement as evidence of Kwik Lok's anti-competitive behavior does not somehow mean that the antitrust claims that call for the Agreement's invalidity do not arise from or relate to the Agreement. As it had done after the Agreement expired, Volm could have in the first instance refused to sign Kwik Lok's proffered contract. Volm cannot now avoid the arbitration provision's scope by raising antitrust claims and alleging it was "forced" to sign the agreement. Dkt. Nos. 16 at 8, 24; 1-2 at ¶ 45. That Volm may not have adequately safeguarded against unexpected circumstances, whether in its customer contracts or otherwise, does not militate a narrow reading of the arbitration clause. For the same reasons, Count VI, which directly attacks the Distribution Agreement via a declaratory judgment claim that seeks to declare the Agreement void and unenforceable, also falls within the provision's ambit.

Count VII is a conversion claim relating to Kwik Lok's decision to withhold the Kroger Artwork after termination of the parties' business relationship. This claim arises from and relates to the Distribution Agreement because it concerns property used during the term of the Agreement, takes place on the heels of the Agreement, and, like Count III, concerns the rights of the parties in the wake of the Agreement's termination with respect to property sold during the Agreement. *See Sweet Dreams*, 1 F.3d at 643–44; *In re Oil Spill*, 659 F.2d at 794. The arbitration provision's broad language naturally encompasses such post-termination disputes.

18

Counts VIII through X concern Kwik Lok's alleged misrepresentations with respect to the patent and trademark protections of its plastic bag-closures. These claims relate to the Distribution Agreement because Volm alleges the representations were made to induce Volm into signing the Agreement. These claims are therefore similar to Volm's claims of anti-competitive conduct. Both claims sound in fraudulent inducement, yet antitrust or misrepresentation accusations do not mean the claims are beyond the scope of the Agreement's arbitration provision.

Because the Distribution Agreement's arbitration provision is valid and enforceable and each of Volm's claims falls within the provision's scope, the court will grant Kwik Lok's motion to dismiss for improper venue.

## B. Motion to Seal Documents

The parties separately dispute Kwik Lok's General Local Rule 79(d) (E.D. Wis.) motion to seal, which requests that designated portions of (1) Kwik Lok's reply brief in support of its motion to dismiss, (2) the declaration of John K. Rothenbueler, President of Kwik Lok, and (3) Exhibit A to Rothenbueler's declaration be restricted to case participants. Rule 79(d)(3) provides that "[a]ny motion to seal must be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record." *See also* General L.R. 79 Committee Comment ("The standard for showing good cause is quite high . . . ."). In support of its motion, Kwik Lok argues that the portions it seeks to seal contain material and contract terms designated as confidential pursuant to the Distribution Agreement and other information, such as pricing and annual performance requirements, that would put it at a competitive disadvantage when negotiating with current and prospective distributors for specific distribution terms. *See* John K. Rothenbueler Decl., Dkt. No. 20, at ¶¶ 3–5.

19

While Volm does not oppose the sealing of pricing and quota information in the Distribution Agreement's Schedules, it objects to the sealing of the remainder of the Agreement and the portions of Kwik Lok's reply brief and Rothenbueler's declaration that quote or reference provisions of the Agreement. Relying primarily on *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002), Volm argues that Kwik Lok's call to seal all of the substantive provisions of its Agreement (except §§ 18.1 and 18.2) and the portions of its reply brief and the Rothenbueler's declaration that quote or reference those provisions is overbroad and unsupported. *See id.* at 548 (determining that the circuit's Operating Procedure 10 requires that motions to seal documents "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations"); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 734 (7th Cir. 2013) ("This court does not look favorably on indiscriminate, reflexive motions to seal the appellate record, but narrow, specific requests will be granted when based on articulated, reasonable concerns for confidentiality." (citation omitted)).

Kwik Lok's motion to seal will be granted as to the Schedules in Exhibit A attached to Rothenbueler's declaration and denied in all other respects. Materials that enter the judicial record "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter*, 297 F.3d at 545. As to these materials, a "strong presumption of public disclosure applies." *Id.* at 548. Kwik Lok contends that disclosure of its agreement with Volm would provide a competitive advantage to current and prospective distributors seeking to modify or enter into contracts with Kwik Lok. *See* Rothenbueler Decl., Dkt. No. 20, at ¶¶ 4–5; *see also, e.g.*, *Wis. Alumni Res. Found. v. Apple, Inc.*, No. 14-cv-062-wmc, 2015 WL 6453837, at *2 (W.D. Wis. Oct. 26, 2015) (citation

20

omitted). But such a broad assertion about being placed at a competitive disadvantage is insufficient to demonstrate good cause. *Baxter*, 297 F.3d at 547; *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-C-1046, 2014 WL 631669, at *2 (E.D. Wis. Feb. 18, 2014).

While information that relates to pricing, distribution, and marketing may constitute a trade secret, *see PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995), Kwik Lok has failed to specifically articulate which provisions within Exhibit A constitute such secrets and deserve protection. The only particularized argument Kwik Lok provides is with respect to the Schedules in Exhibit A, which contain highly confidential and sensitive business information about product pricing and related annual performance requirements. *See* Rothenbueler Decl., Dkt. No. 20, at ¶¶ 6–7; Dkt. No. 18 at 1–2. Such sensitive financial information meets the good cause standard and is properly filed under seal. *See Fomax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-0298, 2013 WL 2452703, at *1 (E.D. Wis. June 5, 2013); *Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, No. 08-C-828, 2011 WL 5105490, at *2 (E.D. Wis. Oct. 25, 2011). Kwik Lok's motion will therefore be granted with respect to the Schedules in Exhibit A attached to Rothenbueler's declaration. Because the references to the Schedules in Rothenbueler's declaration do not themselves contain sensitive financial information, they need not be sealed.

Kwik Lok's argument that Sections 18.1 and 18.2 of Exhibit A are the only provisions relevant to the arbitration issue and are therefore the only provisions that should be publicly disclosed can be rejected. As an initial matter, Kwik Lok itself has relied on provisions other than Sections 18.1 and 18.2 in its briefing. *See* Defs.' Reply Br., Dkt. No. 19, at 3–4, 6–7, 13. Were Sections 13.6 and 17.4 not relevant to the resolution of its motion to dismiss, Kwik Lok would not have cited them. Sections 13.6 and 17.4 respectively concern the post-termination survival and

scope of the Distribution Agreement's arbitration provision, which are central issues in the present dispute. So, too, are the remaining provisions of the Agreement relevant to the scope of the arbitration provision, especially given the arbitration provision's broad "relating to or arising from" language. Determining whether a claim relates to or arises from the Agreement by its nature requires an examination of the Agreement's various provisions. The Distribution Agreement as a whole therefore "influence[s] or underpins[s] the judicial decision" and commands a higher burden, *Baxter*, 297 F.3d at 545, which Kwik Lok has not met. The designated portions of Kwik Lok's reply brief and Rothenbueler's declaration merely refer to provisions of the Agreement other than the Schedules and are therefore not themselves subject to sealing.

**CONCLUSION**

For the foregoing reasons, Kwik Lok's motion to dismiss for improper venue (Dkt. No. 6) is **GRANTED**, its motion to seal documents (Dkt. No. 18) is **GRANTED IN PART** as to the Schedules in Exhibit A attached to the declaration of John K. Rothenbueler and **DENIED** in all other respects. The Clerk is instructed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this __7th__ day of July, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

22
